UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, ET AL., | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| VS. | ) | 3:03-CV-1634-G |
| HEATH HOLDINGS USA, INC., ET AL., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the plaintiff Caliber One Indemnity Company ("Caliber") to disqualify the law firm Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P. ("WEMED") from representing the defendants Clair Odell Insurance Agency, LLC d/b/a Clair Odell Group and Mellon Insurance Agency, Inc. (collectively "COG") in this case. For the reasons stated below, Caliber's motion to disqualify WEMED is granted.

## I. BACKGROUND

This action was initially filed by Senior Living Properties ("SLP") against certain insurance carriers, including Caliber, in connection with SLP's bankruptcy

case. Caliber One Indemnity Company's Motion to Disqualify [WEMED] and Brief in Support ("Motion to Disqualify") at 2. "Caliber is an insurance carrier which issued insurance policies to SLP and had filed an action against SLP seeking to rescind those policies prior to the filing of the Bankruptcy Case." *Id*. at 2-3. In that action, Caliber asserted various claims against SLP and COG, among others. *Id*. at 3. Pursuant to a settlement agreement, Caliber transferred and assigned to SLP all of its claims and causes of action against COG and others relating to the insurance policies Caliber had issued to SLP. *Id.*

While the above matters were pending, SLP confirmed a plan of reorganization in bankruptcy and established the Senior Living Properties LLC Trust (the "SLP Trust"), which, among other functions, pursued all claims of SLP regarding its disputed insurance policies. *Id*. Pursuant to the plan of reorganization, SLP transferred its rights under the settlement agreement between it and Caliber to the SLP Trust. *Id*.

Prior to SLP's bankruptcy filing, WEMED -- through its Dallas office -- defended SLP in various personal injury and insurance litigation. *Id*. at 4-5. WEMED continued to represent the SLP Trust in these actions after it was created through SLP's bankruptcy filing. *Id*.

WEMED represents COG in this action. [WEMED]'s Response and Brief in Opposition to Plaintiff's Motion to Disqualify ("Response") at 1. Michael Cawley

("Cawley") is counsel of record for COG in this action. *Id.* Cawley has represented COG for over ten years. *Id*. Cawley became a partner at WEMED -- in its Philadelphia office -- on April 1, 2005. *Id.*

On May 13, 2005, WEMED was disqualified from representing COG in a related case. *Senior Living Properties LLC Trust v. Clair Odell Insurance Agency LLC*, No. 3:04-CV-0816-G, Memorandum Opinion and Order, filed May 13, 2005. In that action, the court determined that WEMED's former representation of SLP and its representation of COG in that case were substantially related, requiring disqualification. *Id*. at 8-10.

## II. ANALYSIS

### A. Relevant Ethical Canons

In determining whether disqualification of an attorney is appropriate, this court should consider the following ethical canons: (1) the ABA Model Rules of Professional Conduct (the "Model Rules"), (2) the Texas Disciplinary Rules of Professional Conduct (the "Texas Rules"), and (3) the local rules of the Northern District of Texas (the "Local Rules"). *Federal Deposit Insurance Corporation v. United States Fire Insurance Company*, 50 F.3d 1304, 1312 (5th Cir. 1995); *Advanced Display Systems, Inc. v. Kent State University*, No. 3-96-CV-1480-BD, 2001 WL 1524433 at * 4 (N.D. Tex. Nov. 29, 2001) (Kaplan, Magistrate J.). The Model Rules embody "the national standards utilized [in] this circuit in ruling on disqualification motions."

*United States Fire Insurance Company*, 50 F.3d at 1312. Consideration of the Texas Rules is relevant because the Local Rules and the Texas Rules are virtually identical. See *United States Fire Insurance Company*, 50 F.3d at 1312.

Model Rule 1.7(a) provides, in relevant part:

> A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client [or] a former client . . . .

Model Rule of Professional Conduct 1.7(a). In certain circumstances, a client may consent to representation even though a conflict of interest exists. Model Rule 1.7(b). According to the Model Rules,

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Model Rule 1.9(a). The Model Rules impute conflicts under both Rules 1.7 and 1.9 to all lawyers associated in a firm with the conflicted attorney. Model Rule 1.10(a). In most circumstances, a client may consent to representation by the firm, notwithstanding the existence of a conflict. Model Rule 1.10(c).

Similarly, the Texas Rules provide:

> a lawyer shall not represent a person if the representation of that person:
>
> > (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or
> >
> > (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client. . . .

Texas Rule 1.06(b). Further, "a lawyer who personally has formerly represented a client in a matter" may not, without prior consent, represent another person in "the same or a substantially related matter." Texas Rule 1.09(a)(3). Like the Model Rules, the Texas Rules provide that conflicts are imputed to lawyers associated in a firm. Texas Rules 1.06(f), 1.09(b).

B. Disqualification - Generally

The Fifth Circuit has stated that "disqualification of counsel 'is an extreme remedy that will not be imposed lightly.'" *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262-63 (5th Cir. 1983) (citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1025 n.6 (5th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981)). However, the Fifth Circuit has applied the admonition that attorneys should "avoid even the appearance of impropriety." *In re Dresser Industries,*

*Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) (citing canon 9 of the American Bar Association Model Code of Professional Responsibility).

"A party seeking to disqualify opposing counsel on the ground of former representation must establish two elements: 1) an actual attorney-client relationship between the moving party and the attorney [it] seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992) (citing *Johnston v. Harris County Flood Control District*, 869 F.2d 1565, 1569 (5th Cir. 1989)), *cert. denied sub nom.*, *Northwest Airlines, Inc. v. American Airlines, Inc.*, 507 U.S. 912 (1993). "[A] substantial relationship may be found only after 'the moving party delineates with specificity the subject matters, issues and causes of action' common to prior and current representations and the court engages in a 'painstaking analysis of the facts and precise application of precedent.'" *Id*. (citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith*, 646 F.2d 1020, 1029 (5th Cir.), *cert. denied*, 454 U.S. 895 (1981)). The burden of establishing the substantial relationship between the prior and current representations is on the party moving for disqualification. *Id*. A movant's successful establishment of a substantial relationship between the current and prior representation creates an irrebuttable presumption that relevant confidential information was disclosed during the prior representation. *Id.*

In addition to the substantial relationship test, "[the Fifth Circuit has] indicated that a former client could also disqualify counsel by showing that his former attorney possessed relevant confidential information in the manner contemplated by Rule 1.09(a)(2)." *American Airlines*, 972 F.2d at 615. A movant may disqualify counsel by "pointing to specific instances where it revealed relevant confidential information regarding its practices and procedures." *Id*. (citing *Duncan*, 646 F.2d at 1032). Comment 4B to Texas Rule 1.09 provides that a "substantially related" matter, while not defined by the Rule, "primarily involves situations where a lawyer could have acquired confidential information concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client or some other person. It thus largely overlaps the prohibition contained in paragraph (a)(2) of this Rule." Texas Rule 1.09(a)(3), Comment 4B.

C. WEMED's Former Representation of SLP

In its motion to disqualify, Caliber argues that WEMED's former representation of SLP precludes its representation of COG in this matter "[b]ecause the SLP Trust owns and is the successor-in-interest of . . . Caliber's claims against COG in this action." Motion to Disqualify at 1-2. Caliber further asserts that "WEMED received confidential information from SLP and its representatives regarding the existence and scope of insurance coverage as well as the nature, scope and value of the personal injury claims." *Id*. at 5. According to Caliber, "WEMED

also received confidential information from Caliber about claims for which SLP made claims against the Caliber policies, both before and during the Bankruptcy Case." *Id.*

In response, WEMED avers that SLP is not the real party in interest in this case, and that WEMED never represented Caliber, the real party in interest. Response at 4-6 ("The inescapable fact which torpedoes Caliber's Motion is that WEMED never represented Caliber in this or any related litigation."). WEMED further argues that "[n]o relevant confidential information was possessed by WEMED in the manner contemplated by Texas . . . Rule 1.09(a)(2)." *Id*. at 11.

In reply, Caliber offers evidence that WEMED attorneys were privy to confidential information regarding the Bankruptcy Case. Caliber One Indemnity Company's Reply Brief at 8-9. The evidence is an email from WEMED attorney Lee Cameron in reply to an email sent by Caliber's attorney, Lynette Warman. See Supplemental Appendix [for Plaintiff's Motion to Disqualify] at 390. The email states:

> In personal injury matters the law allows a client to maintain the privilege even when sharing privileged information with the [insurance] carrier. The privilege, however, belongs to SLP, not the carrier. As a result, only SLP can waive it. The release of these reports to the plaintiffs' bar would greatly hinder our ability to defend SLP in pending and future matters. Among other things, the reports detail the type of facts that bother us (and hence raise the settlement value), provides our strategy for overcoming problematic facts, and provides our comments (pro and con) on our witnesses. The information in these reports is highly confidential. I suggest that y'all strongly

> consider emergency injunctive relief to prevent disclosure
> . . . .

*Id.* The reports that the email refers to appear to be personal injury case evaluations prepared by Mr. Cameron. *Id*. In response to Caliber's arguments regarding the above email, WEMED asserts that the information discussed in the email above is not relevant to this case. [WEMED]'s Sur Reply Brief in Opposition to Caliber One's Motion to Disqualify ("Surreply") at 6. Rather, WEMED asserts that the email dealt with personal injury matters, and the issues in this case involve "whether COG and the other defendants made any misrepresentations in the procurement of insurance coverage." *Id*. Caliber, however, asserts that "WEMED lawyers acquired knowledge from SLP and the SLP Trust about the valuation of personal injury settlements for which Caliber seeks recovery from COG in this action." Motion to Disqualify at 9.

Texas Rule 1.09 "forbids a lawyer to appear against a former client if the current representation in reasonable probability will involve the use of confidential information" gained from the prior representation. *American Airlines*, 972 F.2d at 615. As discussed above, an attorney may be disqualified if he possesses confidential information obtained during prior representation, and such information may be used to the former client's disadvantage. *Abney v. Wal-Mart*, 984 F. Supp. 526, 528 (E.D. Tex. 1997).

If WEMED received relevant confidential information during its representation of SLP or the SLP Trust, and this information may be used to the SLP

Trust's disadvantage, WEMED should be disqualified. It is not pivotal that WEMED did not directly represent Caliber. If the information garnered during the first representation can be used to the SLP Trust's disadvantage via WEMED's representation of COG, that is a sufficient conflict of interest to warrant disqualification. Here, Caliber assigned its rights in the litigation to SLP, who later assigned its rights in the litigation to the SLP Trust. As it stands, the SLP Trust is entitled to 87.5 percent of any recovery against COG. Thus, if WEMED were to use confidential information to lessen or negate any recovery against COG, it is clear that the SLP Trust would be disadvantaged. However, as WEMED notes, *see* Surreply at 6, the confidential information must be relevant to the litigation at hand. *Abney*, 984 F. Supp. at 529-30. The mere fact that WEMED may have gained confidential information, in general, is not sufficient to warrant disqualification.

Hence, the critical issue here is whether WEMED, in the course of its representation of SLP and the SLP Trust, received confidential information which is relevant to the instant case. Caliber asserts that the email from Lee Cameron of WEMED establishes that WEMED received confidential information regarding certain personal injury claims which form a portion of the recovery that Caliber seeks in this action. WEMED relies on the affidavit of Cameron in which he states:

> During the course of [WEMED's] representation of SLP an[d]/or SLP Trust, I do not believe that WEMED-Dallas received any confidential with regard to the effect of coverage issues, if any, on the value of the personal injury

> claims, and/or insurance notice issues, if any, pertaining to the personal injury claims. The only information that I recall regarding any coverage issues was information which was publicly available, such as the public knowledge that SLP's insurers had filed recission [sic] actions.

Surreply at 6.[1] However, the email indicates that WEMED was privy to confidential information that was shared between SLP, or the SLP Trust, and Caliber. Accordingly, it appears likely that WEMED received confidential information regarding coverage issues, and personal injury actions involving Caliber. Such issues may become relevant in this action, as Caliber is seeking recovery for amounts paid under its policies and in settlement of these personal injury actions.

In light of the prior and current relationships among WEMED, Caliber, SLP, and the SLP Trust, WEMED's representation of COG in this action creates an appearance of impropriety. Moreover, it appears that WEMED was likely privy to confidential information which is relevant to the issues in the present case. Such information can possibly be used to the disadvantage of WEMED's former client, the

---

[1] Local Rule 7.1(i) requires parties who rely on documentary evidence, such as an affidavit, to support or oppose a motion to attach that evidence in a separate appendix. The Cameron affidavit was not included in WEMED's appendix to its response. However, the affidavit was included in its appendix to its response to the motion to disqualify in the case styled *Senior Living Properties LLC Trust v. Clair Odell Insurance Agency LLC*, No. 3:04-CV-0816-G, Northern District of Texas.

SLP Trust and/or SLP. Accordingly, disqualification of WEMED from its representation of COG in this case is required.[2]

III. CONCLUSION

For the reasons discussed above, Caliber's motion to disqualify is **GRANTED**. Accordingly, WEMED is **DISQUALIFIED** from representing COG in this action.

**SO ORDERED**.

August 9, 2005.

A. JOE FISH
CHIEF JUDGE

[2] In a letter from Cawley, the court was assured that such a determination will not alter the schedule of this case, due to COG's acquisition of new attorneys in the related case. *See* Letter from Michael Cawley, dated June 20, 2005.